Maxx Phillips, HI Bar No. 10032
CENTER FOR BIOLOGICAL DIVERSITY
1188 Bishop Street, Suite 2412
Honolulu, HI 96813
Tel: (808) 284-0007
mphillips@biologicaldiversity.org

Emily Jeffers, CA Bar No. 274222*
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7100
ejeffers@biologicaldiversity.org
* Application for admission *pro hac vice* forthcoming

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY;<br>SURFRIDER FOUNDATION;<br>SUSTAINABLE COASTLINES HAWAII,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, Administrator; MIKE STOKER, Region 9 Administrator, United States Environmental Protection Agency,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br>(Administrative Procedure Act, 5 U.S.C § 706, and Clean Water Act,33 U.S.C. §§ 1251, *et seq*.) |

# INTRODUCTION

1.     Hawaii's coastal waters, famous worldwide for their clarity and stunning wildlife, are endangered by an emerging threat. Plastic garbage, and in particular tiny pieces of plastic called "microplastics," are contaminating Hawaii's waters, damaging vulnerable marine ecosystems and threatening human health. Microplastics harm wildlife via ingestion and by exposing them to dangerous toxins, and those toxins are transferred throughout the food web. Larger plastic items can also kill or harm animals by entangling them or causing intestinal blockage.

2.     Numerous studies have documented the presence of microplastics in Hawaiian waters. These studies indicate a serious water quality problem.

3.     The Clean Water Act, the nation's strongest law protecting water quality, aims to halt water pollution and protect the beneficial uses of water bodies. Toward those goals, Section 303(d) of the Clean Water Act requires each State to identify any water bodies that fail to meet the State's water quality standards and list those bodies as "impaired" waters. 33 U.S.C. § 1313(d). States must evaluate all existing and available water quality related data to develop its impaired waters list.

4.     The State must then submit its 303(d) list of impaired waters (a "303(d), or impaired waters list") to the Environmental Protection Agency

("EPA"), and EPA must either approve the list if it meets the requirements of the law or disapprove the list. 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2). If EPA disapproves the list, Section 303(d) requires that EPA identify any impaired water bodies omitted from a State's list within thirty days. 33 U.S.C. § 1313(d)(2).

5.     A State's list of impaired water bodies serves several purposes. Primarily, for each water on the list, the State must identify the pollutant causing the impairment, when known, and then develop a plan to improve water quality for the impaired water body based on the severity of the pollution and the sensitivity of the water's use. 40 C.F.R. § 130.7(b)(4).

6.     Despite available scientific data and information on plastic pollution and its harmful impact on Hawaii's marine waters, the State of Hawaii failed to evaluate that data on plastic pollution and did not include any marine waters impaired due to plastic pollution on its 2016 or 2018 impaired waters lists.

7.     EPA is legally required to ensure Hawaii has evaluated all available data on plastic pollution and identify any of Hawaii's marine waters impaired by plastics. But EPA has failed to do so.

8.     EPA approved Hawaii's lists despite Hawaii's failure to evaluate available data on plastic pollution and include waters that failed to meet applicable water quality standards due to plastic pollution.

9.      Accordingly, Plaintiffs Center for Biological Diversity, Surfrider Foundation, and Sustainable Coastlines Hawaii seek a declaration that EPA's approvals of Hawaii's 2016 and 2018 impaired waters lists are arbitrary and capricious, and otherwise not in accordance with law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2), due to violations of Section 303 of the Clean Water Act, 33 U.S.C. § 1313(d)(2). Plaintiffs also seek an order requiring EPA to promptly evaluate and identify waters impaired by plastic pollution.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. §§ 702-03 (Administrative Procedure Act). The requested relief is authorized by 5 U.S.C. § 706(2).

11.     As a courtesy, Plaintiffs provided Defendants with notice of their intent to sue over the violations of law alleged in this Complaint more than sixty days ago. Defendants have not remedied these violations of law.

12.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e)(1) because the violations alleged in this complaint are affecting oceans waters in this judicial district.

## PARTIES

13.    Plaintiff the Center for Biological Diversity ("the Center") is a nonprofit corporation dedicated to the preservation of biodiversity, native species, and ecosystems. The Center's Oceans Program focuses specifically on conserving marine ecosystems, and seeks to ensure that imperiled species are properly protected from destructive practices in our oceans. In pursuit of this mission, the Center has worked extensively to protect ocean ecosystems in Hawaii and nationwide from various threats including plastic pollution. The Center has engaged in efforts to protect endangered marine species threatened by plastic pollution in Hawaii, such as Hawaiian monk seals, sea turtles, whales, and corals.

14.    The Center currently has more than 74,500 members, many of whom live in Hawaii. Center members and staff live in and regularly visit Hawaii's coastal and marine areas, including the waters at issue in this case. Center members regularly use Hawaii's ocean and coastal areas for research, snorkeling, swimming, aesthetic enjoyment, observation, fishing, and other recreational, scientific, and educational activities and intend to continue doing so in the future. Center members and staff also regularly research, observe, photograph, enjoy habitat, and seek protection for numerous marine species that are affected by plastic pollution in Hawaii, including coral, sea turtles, fish, seals, and whales. They intend to

continue doing so in the future. The maintenance of a healthy marine ecosystem and water quality is important to the Center's members' interest.

15.     Plaintiff Surfrider Foundation ("Surfrider") is a nonprofit environmental organization dedicated to the protection and enjoyment of the world's ocean, waves and beaches whose members are adversely affected by plastic pollution in waterways. Surfrider has more than 500,000 members and supporters nationwide that use and enjoy the nation's waters, including members that live in Hawaii. Surfrider members visit, use, swim, play, surf, and otherwise recreate in waters of the United States, including areas currently or potentially listed on the impaired water bodies. Surfrider's members' use and enjoyment of these areas depends on clean water, populations of marine life supported by a healthy marine environment in the Pacific Ocean. Surfrider members use the waters off the coast of the Hawaiian islands, its coastal resources, and marine species for aesthetic, and recreational, and commercial purposes through a myriad of activities, including but not limited to: surfing, swimming, stand up paddleboarding, kite boarding, wind surfing, body boarding, body surfing, coastal running, coastal hiking, coastal biking, scuba diving, snorkeling, beach walking, coastal and marine wildlife viewing and/or general beach going.

16.     While Surfrider Foundation has over 80 grassroots local chapters and 100 school clubs across the nation, Surfrider maintains 5 of those chapters in the

Complaint

*Center for Biological Diversity et al. v. EPA, et al.*                                                          6

Hawaiian Islands, where it has operated for decades to protect the Pacific Ocean's coastal and marine resources. The Hawaii chapters are run by volunteer members who are committed to upholding Surfrider's mission, including the priority initiative of reducing the harmful effects of plastic pollution on coastal waters.

17.     Plaintiff Sustainable Coastlines Hawaii is a grassroots environmental nonprofit organization dedicated to empowering local communities to care for Hawaii's coastlines through education, activism, and hands-on beach cleanups. Sustainable Coastlines Hawaii was created by a passionate group of local community members inspired to turn the tide on the plastic pollution epidemic in Hawaii. To meet this mission, Sustainable Coastlines Hawaii coordinates large scale coastal cleanups, educational programs, public awareness campaigns, partners with businesses and government agencies, and facilitates other interested groups to run their own cleanups. Since Sustainable Coastlines Hawaii's inception in 2011, over 35,000 volunteer members have removed at least 500,000 pounds of debris from Hawaii's coastlines. Additionally, Sustainable Coastlines Hawaii staff has educated at least 40,000 students about how to combat the plastic pollution crisis in Hawaiian waters. Sustainable Coastlines Hawaii's members and staff live and work in Hawaii and frequent the waters at issue in this case. Sustainable Coastlines Hawaii's members and staff routinely use Hawaii's coastal areas and waters for a myriad of cultural, recreational, educational, and scientific purposes

Complaint

*Center for Biological Diversity et al. v. EPA, et al.*

such as fishing, Hawaiian traditional and customary practices, surfing, paddling, swimming, research, snorkeling, diving, and aesthetic enjoyment.

18.     As a result of plastic pollution, Plaintiffs' members' interests are harmed. For example, one Center member's aesthetic enjoyment of Hawaiian beaches in diminished when she sees plastic pollution, and when she sees sea turtles and monk seals she worries they could become killed, entangled, or otherwise harmed by plastic pollution. One Surfrider member enjoys surfing and swimming in Hawaii and is disturbed when he sees tiny pieces of plastic floating in the water. One Sustainable Coastlines Hawaii member worries that the fish she caught for her family is no longer safe for human consumption due to the large amount of microplastics she observes in the surrounding ocean waters. These cultural, aesthetic, scientific and conservation harms are actual, concrete injuries suffered by Plaintiffs and their members. Plaintiffs brings this action on behalf of themselves and their members.

19.     Plaintiffs and their members' injuries are directly traceable to EPA's unlawful approval of Hawaii's deficient 303(d) lists. States must evaluate all available water quality data and identify impaired water bodies – those failing to meet water quality standards – and establish limits on pollutants causing their impairment. If a State fails to evaluate water quality data or list an impaired water body, EPA must reject the State's list and evaluate the data and identify impaired

Complaint

*Center for Biological Diversity et al. v. EPA, et al.*                                          8

waters on its own. Marine waters in Hawaii do not meet state water quality standards, and therefore when the State failed to identify waters impaired by plastic pollution, EPA was required to disapprove the State's list and identify those waters as impaired. Once a water body is identified as impaired, either the state or EPA must set total maximum daily load of pollutants that will ensure the protection of water quality. As a result of EPA's approval of Hawaii's impaired waters lists, there has been a continued influx of plastic pollutants that are harming marine wildlife and ecosystems. EPA's approval of Hawaii's deficient lists inhibits the protection of water quality and denies important pollution regulations for water bodies and marine species, and decreases Plaintiffs' members' ability to use, research, view, and enjoy affected habitats and marine species.

20.     Plaintiffs and their members are also suffering procedural and informational injuries resulting from EPA's deficient evaluations and identification of waters impaired by plastic pollution and the consequent failure to establish total maximum daily loads and take other actions as required by the Clean Water Act. EPA regulations make it clear that impaired water listings and total maximum daily loads shall be developed with public participation. Due to EPA's violations of law, Plaintiffs and their members are deprived of informational and procedural benefits that would aid them in their activities to conserve ocean wildlife and habitat.

21.    Plaintiffs' injuries can be redressed by the declaratory and injunctive relief sought herein. An order compelling EPA to evaluate all existing data and identify Hawaii's waters not attaining water quality standards due to plastic pollution will be more protective of water quality. Listing triggers a duty for these states or the EPA to develop total maximum daily loads necessary to attain applicable water quality standards, which are incorporated into water quality management plans. The addition of waters impaired by plastic pollution to Hawaii's impaired list would also result in increased monitoring and management of those waters as well as benefits from educating the public and policymakers about plastic pollution. Listing would focus funding, research, and management on those areas that are vulnerable to plastic pollution. Therefore, a final list, which may include waters impaired by plastic pollution, will likely improve ocean water quality, and increase and improve Plaintiffs' members' opportunities to use and enjoy marine waters and species of Hawaii.

22.    Defendant United States Environmental Protection Agency is the federal agency charged with the implementation of the Clean Water Act. EPA has the duty, authority, and ability to remedy the injuries alleged in this complaint.

23.    Defendant Andrew Wheeler is the Administrator of EPA and is sued in his official capacity. As Administrator of EPA, he is responsible for the agency's implementation of the Clean Water Act. Acting Administrator Wheeler

has the ultimate duty, authority, and ability to remedy the injuries alleged in this complaint.

24.     Defendant Mike Stoker is the Administrator of Region 9 of the EPA and is sued in his official capacity. EPA Region 9's jurisdiction covers Hawaii and its ocean waters that are harmed by EPA's unlawful actions and inactions. Regional Administrator Stoker is responsible for EPA's implementation of the Clean Water Act within Region 9, including ocean waters in Hawaii. The Regional Administrator has the duty, authority, and ability to remedy the injuries alleged in this complaint.

## LEGAL BACKGROUND

**The Clean Water Act**

25.     Congress enacted the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Id*. § 1251(a). One of the Act's goals is to achieve "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water . . . ." *Id*.

26.     To meet these goals, each State must establish water quality standards that protect specific uses of waterways within the state's boundaries. *Id*. § 1313(a)-(c); 40 C.F.R. § 130.3. To do so, a State first designates the use or uses of a particular body of water, *see* 40 C.F.R. § 131.10, and then designates water quality

Complaint
*Center for Biological Diversity et al. v. EPA, et al.*                                                11

criteria necessary to protect their designated uses, *id*. § 131.11. These water quality standards include numeric criteria, narrative criteria, water body uses, and antidegradation requirements and should "provide water quality for the protection and propagation of fish, shellfish and wildlife and for recreation . . . ." 40 C.F.R. § 130.3.

27.     Section 303(d) of the Act requires States to establish a list of impaired water bodies within their boundaries for which existing pollution controls "are not stringent enough" to ensure "any water quality standard applicable" will be met. 33 U.S.C. § 1313(d)(1)(A). This list is often referred to as a State's "303(d) list" or list of "impaired waters."

28.     The State's 303(d) list must include all water bodies that fail to meet "any water quality standard," including "numeric criteria, narrative criteria, water body uses, and antidegradation requirements." 40 C.F.R. § 130.7(b)(1), (3).

29.     In developing its 303(d), or impaired waters, list, the State must evaluate all existing and readily available water quality related data. *Id.* § 130.7(b)(5). Once complete, the State must then submit its list to EPA, including a rationale for any decision to not use any existing and readily available data. *Id.* § 130.7(b)(6)(iii).  EPA must approve, disapprove, or partially disapprove the list within thirty days. 33 U.S.C. § 1313(d)(2). EPA may only approve a list if it has been developed after an assessment and evaluation of all available water quality

related data. *Id.* If EPA does not approve a State's 303(d) list, the Administrator "shall not later than thirty days after the date of such disapproval identify such waters" in the State that should have been listed as impaired. *Id.*; 40 C.F.R. § 130.7(d)(2). The Regional Administrator must "promptly issue a public notice comment" on the identified impaired waters, and transmit the list of impaired waters to the State, and "the State shall incorporate them into its current plan . . . ." 40 C.F.R. § 130.7(d)(2); 33 U.S.C. § 1313(d)(2).

30.     Once a water body is listed as impaired pursuant to Clean Water Act section 303(d), the State has the authority and duty to control pollutants from all sources that are causing the impairment. Specifically, the State or EPA must establish total maximum daily loads of pollutants that a water body can receive and still attain water quality standards. 33 U.S.C. § 1313(d). States then implement the maximum loads by incorporating them into the state's water quality management plan and controlling pollution from point and nonpoint sources. 33 U.S.C. § 1313(e); 40 C.F.R. §§ 130.6, 130.7(d)(2). The goal of section 303(d) is to ensure that our nation's waters attain water quality standards whatever the source of the pollution.

**The Administrative Procedure Act**

31.     The Administrative Procedure Act allows for judicial review of agency actions. 5 U.S.C. § 702.

Complaint
*Center for Biological Diversity et al. v. EPA, et al.*                                    13

32.    Under the Administrative Procedure Act, a reviewing court "shall . . . hold unlawful and set aside" agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706(2).

## PROCEDURAL BACKGROUND

**Hawaii's Listing Process**

33.    In 2015, the State of Hawaii solicited data for the preparation of the State's 2016 list of impaired waters. The Center submitted comments on October 30, 2015, requesting the State list seventeen of Hawaii's coastal and oceanic waters as impaired due to plastic pollution. The Center included with its submission the scientific sources that formed the basis for its comments.

34.    The State failed to examine the microplastic data submitted by the Center and did not list any waters as impaired due to plastic pollution. In its draft 303(d) list, the State said that while it received the Center's data, it was "not able to assess that information." The Center commented on the draft list, reminding the State of its responsibility to evaluate all available data, including the data submitted by the Center. The State submitted its 2016 list of impaired waters to EPA on December 14, 2017, acknowledging the Center's data submission but stating that it would not asses that information nor list microplastics as a pollutant.

35.    On February 15, 2018 EPA approved Hawaii's 2016 list of impaired waters.

36.     In May 2018, without previously putting out a call for data, the State of Hawaii released a draft 2018 Integrated Report. The draft Report does not evaluate the microplastic data previously submitted by the Center, and no marine waters are listed as impaired due to plastic pollution. The State submitted the 2018 Integrated Report to EPA in June 2018.

37.     On August 16, 2018, EPA approved the State's 2018 Integrated Report without listing any plastic-impaired waters or evaluating all the available data on plastic pollution, including that submitted by the Center.

## FACTUAL BACKGROUND

**Plastic Pollution**

38.     Trillions of pieces of plastic float in the global ocean, and billions more are found on beaches around the world. Under a business-as-usual scenario, the ocean is expected to contain more plastics than fish (by weight) by 2050. The vast majority of marine debris, including plastic, originates from land-based sources like urban runoff, inadequate waste disposal and management, and industrial activity.

39.     Plastic pollution poses significant threats to marine organisms and coastal communities. Plastic never fully biodegrades or decomposes, but instead breaks into smaller and smaller pieces that is readily dispersed by water and wind. Microplastics, or plastic particles that are less than five millimeters in size, are

Complaint
*Center for Biological Diversity et al. v. EPA, et al.*                                    15

especially emerging as a major threat to marine wildlife and water quality generally.



Plastic pollution on Oahu beach. *Photo*: Sustainable Coastlines Hawaii

40.     The primary danger to marine animals from plastic pollution is through ingestion. Whenever an animal ingests plastic, it can choke on it or have organ blockage or damage.   It is also exposed to an assortment of toxic contaminants that affect reproduction and survival. These toxic chemicals come from the breakdown of the plastic itself, and also from chemicals that the plastic has accumulated from surrounding seawater. These toxic chemicals include heavy metals and persistent organic pollutants like DDT and PCBs. Plastic particles therefore provide a pathway to transfer environmental pollutants dissolved in seawater to the marine food web.

41.     Scientists have documented over 2,200 species impacted by marine debris, including many Hawaiian species. For example, scientists have recorded ingestion of plastic particles in all seven species of sea turtles that inhabit Hawaii's waters and beaches. Over forty percent of all seabirds eat plastic, sometimes with fatal effects. Studies have shown that a high percentage of fish captured by the Hawaii longline fishery had ingested plastic particles. Plankton, invertebrates, fish, sea birds, sea turtles, and marine mammals in Hawaii all are known to adsorb, ingest, or otherwise uptake microplastics.



Sea turtle on Oahu amidst plastic pollution. *Photo*: Sustainable Coastlines Hawaii

42.     Plastic also poses a threat to the fishing industry and people who eat seafood. As fish and other aquatic life consume plastics, and the toxins within them, scientists are concerned that these toxins will travel up the food chain and pose a serious health risk to humans. Robust medical evidence links various contaminants commonly found in microplastics with a host of human illnesses including cancer, neurological disorders, and reproductive disorders. The health

risk to humans also poses an economic risk to the fishing industry, whose vitality depends on healthy ecosystems and consumer demand.

43.     Plastic pollution poses a threat to marine animals, ecosystems, and humans.

**Hawaii's Impaired Ocean Waters**

44.     Hawaii's marine waters are protected with several water quality standards that are relevant to plastic pollution.

45.     First, all of Hawaii's waters "shall be free of substances attributable to domestic, industrial, or other controllable sources of pollutants." Hawaii Administrative Rules "HAR", § 11-54-4(a). Pollutants include materials that will settle to form bottom deposits; floating materials; substances that will result in objectionable color or turbidity in receiving waters; substances that are toxic or harmful to human, animal, plant or aquatic life; and substances that produce undesirable aquatic life. *Id*. § 11-54-4(a)1-5.

46.     Second, Hawaii's ocean water must protect designated uses that include "the support and propagation of shellfish and other marine life, conservation of coral reefs and wilderness areas, compatible recreation, and aesthetic enjoyment," *id*. § 11-54-3(c)(1) (for class AA waters), and recreation and aesthetic enjoyment and uses must be "compatible with the protection and propagation of fish, shellfish, and wildlife." *Id*. § 11-54-3(c)(2) (for class A

Complaint

waters). Class AA waters must also remain in their natural pristine state as nearly as possible with an absolute minimum of pollution or alternation of water quality from any human caused source or action. *Id*. § 11-54-2(c)(2).

47.    Third, Hawaii protects the designated uses of reefs and reef communities, including mollusks, echinoderms, worms, crustaceans, and reef-building corals, and living coral thickets, mounds, or platforms. HAR § 11-54-7. Hawaii's marine bottom systems must "remain as nearly as possible in their natural pristine state with an absolute minimum of pollution from any human induced source" for class 1 ecosystems, *id*. § 11-54-3(d)(1), and class II ecosystems must be protected for the propagation of fish, shellfish and wildlife. *Id*. § 11-54-3(d)(2).

48.    Finally, Hawaii has a general policy of water quality anti-degradation for all waters within its jurisdiction. *Id.* § 11-54-1.1.

49.    Hawaii's open coastal and marine waters, and sandy bottom beaches are heavily impacted by microplastic pollution and violate numerous water quality standards. Studies have found high concentrations of microplastics in open coastal marine and oceanic waters, and microplastic samples are often contaminated with various persistent organic pollutants.

50.    Thousands of pieces of mircoplastic pollution have been documented on various beaches and in coastal waters on Kauai's north, east, and south shores. A study of Kamilo Beach on the Big Island showed that microplastic pollution in

beach sediments increased permeability of the sediment and lowered subsurface temperatures, which could alter the sex determination of turtles. Various beaches and coastal waters on Oahu, Molokai, Hawaii, and Tern Island are also contaminated with microplastics. Scientific studies indicate that local sources of pollution contribute significantly to plastic pollution in Hawaii.

51.     Studies indicate that seventeen coastal water bodies in the State do not meet the State's water quality standards. These waters include: (1) the open coastal marine and oceanic waters off the south-east coast of Hawaii; (2) oceanic waters off Necker Island; (3) oceanic waters off Nihoa Island; (4) oceanic waters between Nihoa and Niihau; (5) open coastal marine waters off Kaula; (6) open coastal waters off Tern Island; (7) open coastal waters of Kamilo Beach, Hawaii; (8) open coastal waters off Kalihiwai, Kauai; (9) open coastal waters off Kealia, Kauai; (10) open coastal waters of Lydgate, Kauai; (11) open coastal waters of Mahaulepu, Kauai; (12) open coastal waters off Nanakuli Beach, Oahu; (13) open coastal waters off North Halawa Valley, Molokai; (14) open coastal waters off South Halawa Valley, Molokai; (15) open coastal waters off Green Sands Beach, Hawaii; (16) open coastal waters off North Waipio Valley, Hawaii; and (17) open coastal waters off South Waipio Valley, Hawaii.

52.     Because many of Hawaii's ocean waters do not attain water quality standards, including narrative criteria, designated uses, and antidegradation

requirements, these ocean waters meet the requirements for inclusion on Hawaii's list of impaired water bodies. These seventeen water bodies should be listed as threatened or impaired for failing to achieve one or more of Hawaii's water quality standards. At the very least, Hawaii was required to evaluate all existing and readily available data on plastic pollution, including the data submitted by the Center, in order to assess whether these waterbodies were achieving the relevant water quality standards. Yet Hawaii failed to do so, and EPA repeatedly approved Hawaii's deficient 303(d) lists of impaired waters.

## CLAIMS FOR RELIEF

(Violations of the Clean Water Act and Administrative Procedure Act)

53.     Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint.

54.     Hawaii's 2016 and 2018 impaired waters lists failed to evaluate data on microplastics and failed to include all ocean segments that do not meet Hawaii's water quality standards due to plastic pollution. EPA's approvals of Hawaii's 2016 and 2018 impaired waters lists therefore violates the Clean Water Act Section 303(d), 33 U.S.C. § 1313(d), and is arbitrary and capricious, and otherwise not in accordance with law, in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). EPA's approval of Hawaii's deficient impaired waters lists constitutes agency action and is subject to judicial review. 5 U.S.C. § 701-706.

## **REQUEST FOR RELIEF**

For the reasons listed above, Plaintiffs respectively request that the Court grant the following relief:

1.     A declaration that EPA violated its duties under the Clean Water Act and acted in a manner that is arbitrary, capricious, or otherwise not in accordance with law when it unlawfully approved Hawaii's deficient lists of impaired water bodies under Section 303(d) of the Clean Water Act.

2.     An order compelling EPA to disapprove Hawaii's lists of impaired water bodies and consider available data on plastic pollution and identify waters impaired by plastic pollution within 30 days of the disapproval, as required by Section 303(d) of the Clean Water Act or, in the alternative, an order vacating and remanding the approvals to EPA for a new determination that complies with the requirements of the Clean Water Act and Administrative Procedure Act by a date certain; and

3.     Award Plaintiffs their costs of litigation, including reasonable attorneys' fees as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4.     Grant Plaintiffs such other relief as the Court deems just and proper.

Respectfully submitted this 5th day of February, 2020.

*/s/ Maxx Phillips*

Maxx Phillips (HI Bar No. 10032)
CENTER FOR BIOLOGICAL
DIVERSITY
1188 Bishop Street, Suite 2412
Honolulu, HI 96813
Tel: (808) 284-0007
mphillips@biologicaldiversity.org

Emily Jeffers, Ca. Bar No. 274222*
CENTER FOR BIOLOGICAL
DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7100
ejeffers@biologicaldiversity.org
*Application for admission *pro hac vice* forthcoming

*Attorneys for Plaintiffs*